UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GERALD BYERLY, On behalf of Himself and All Others Similarly Situated<br><br>Plaintiff,<br><br>-against-<br><br>CONTANGO OIL & GAS COMPANY, JOHN C. GOFF, LON McCAIN, JANET PASQUE, WILKIE S. COLYER, JR., JOSEPH J. ROMANO, B.A. BERILGEN, and KAREN SIMON,<br><br>Defendants. | Case No.: _____<br><br>CLASS ACTION<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, Gerald Byerly ("Plaintiff"), on behalf of himself and all others similarly situated, by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.      This is a class action brought by Plaintiff against Contango Oil & Gas Company ("Contango" or the "Company") and the members of Contango's board of directors (the "Board" or the "Individual Defendants" and together with Contango, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, in connection with the proposed merger of Contango with Independence Energy LLC ("Parent" or "Independence"), IE OpCo LLC ("OpCo"), IE PubCo Inc. ("New PubCo"), IE L Merger Sub LLC ("L Merger Sub"), and IE C

1

Merger Sub Inc. ("C Merger Sub," and with Parent, OpCo, New PubCo, and L Merger Sub, "Independence Energy") (the "Proposed Transaction").

2. On June 7, 2021, the parties entered into a Transaction Agreement (the "Transaction Agreement"), pursuant to which each share of Contango common stock will be converted into the right to receive 0.2 of a share of the new publicly-traded holding company, New PubCo. (the "Transaction Consideration"). Upon consummation of the Proposed Transaction, former owners of Parent will own approximately 75% of OpCo, 100% of the total outstanding NewPubCo Class B common stock and approximately 75% of the total outstanding New PubCo Class A common stock and NewPubCo Class B common stock taken together. Former stockholders of Contango will own New PubCo Class A common stock representing approximately 25% of the New PubCo Class A common stock and New PubCo Class B common stock, taken together.

3. On July 23, 2021, in order to solicit Contango shareholders to vote in favor of the Proposed Transactions, Defendants authorized the filing of a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement").

4. In particular, the Registration Statement contains materially incomplete and misleading information concerning: (i) financial projections for Contango and Independence, (ii) the valuation analyses performed by Contango's financial advisor, Jefferies LLC ("Jefferies").

5. The special meeting of Contango shareholders to vote on the Proposed Transaction is forthcoming (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Registration Statement is disclosed prior to the Shareholder Vote so Plaintiff can make an informed decision on the Proposed Merger and properly exercise his corporate suffrage rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction until the material information discussed herein is disclosed to Contango's shareholders sufficiently in advance of the Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction over this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over the Defendants by this Court permissible under traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman* 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* At 1316.

9.      Venue is proper in this District under Section 27 of the Exchange Act and 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, Contango's common stock trades on the New York Stock Exchange, which is

3

headquartered in this District rendering venue in this District appropriate. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

10. Plaintiff is, and at all relevant times has been, a shareholder of Contango.

11. Defendant Contango is a Texas corporation with its principal executive offices located at 111 E. 5th Street, Suite 300, Forth Worth Texas 76102. Contango's common stock trades on the New York Stock Exchange under the ticker symbol "MCF."

12. Individual Defendant Wilkie S. Colyer is, and has been at all relevant times, a director and the Chief Executive Officer and President of Contango.

13. Individual Defendant John C. Goff is, and has been at all relevant times, a director of Contango.

14. Individual Defendant Lon McCain is, and has been at all relevant times, a director of Contango.

15. Individual Defendant Janet Pasque is, and has been at all relevant times, a director of Contango.

16. Individual Defendant Joseph J. Romano is, and has been at all relevant times, a director of Contango.

17. Individual Defendant B.A. Berilgen is, and has been at all relevant times, a director of Contango.

18. Individual Defendant Karen Simon is, and has been at all relevant times, a director of Contango.

19. The Individual Defendants referred to in ¶¶ 12-18 are collectively referred to herein as the "Individual Defendants" and with Contango they are referred to herein as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**I.      Background and the Proposed Merger**

20.     Contango is an independent oil and natural gas company whose underlying business has been to maximize production and cash flow from its offshore properties in the shallow waters of the Gulf of Mexico and onshore properties in Texas, Oklahoma, Wyoming and Louisiana, and to use that cash flow to explore, develop, exploit, increase production from and acquire crude oil and natural gas properties across the United States.

21.     Independence is a diversified, well-capitalized U.S. independent energy company with a portfolio of assets in key proven basins across the lower 48 states. Independence was formed in June 2020 in the State of Delaware, with its predecessor operating since 2011. Independence's principal executive offices are located at 600 Travis Street, Suite 7200, Houston, Texas 77002.

22.     OpCo is a Delaware limited liability company and a direct, wholly owned subsidiary of Independence that was formed by Independence on June 3, 2021 solely in contemplation of the Proposed Transaction. Its principal executive offices are located at 600 Travis Street, Suite 7200, Houston, Texas 77002.

23.     New PubCo is a Delaware corporation and a direct, wholly owned subsidiary of Independence that was formed by Independence on June 3, 2021 solely in contemplation of the Proposed Transaction. Its principal executive offices are located at 600 Travis Street, Suite 7200, Houston, Texas 77002.

24.     L Merger Sub is a Delaware limited liability company and a direct, wholly owned subsidiary of New PubCo that was formed by New PubCo on June 3, 2021 solely in contemplation of the Proposed Transaction. Its principal executive offices are located at 600 Travis Street, Suite

7200, Houston, Texas 77002.

25.     C Merger Sub is a Delaware corporation and a direct, wholly owned subsidiary of New PubCo that was formed by New PubCo on June 3, 2021 solely in contemplation of the Proposed Transaction. Its principal executive offices are located at 600 Travis Street, Suite 7200, Houston, Texas 77002.

26.     On June 8, 2021, Contego and Independence issued a joint press release announcing the Proposed Transaction, which states in relevant part:

### Independence Energy to Combine with Contango in All-Stock Merger to Create a Premier U.S. Independent Oil and Gas Company

*Combined Company to Deliver Attractive Risk-Adjusted Returns through Cash Flow Oriented Business Model*

*Projected to be Substantially Accretive to Contango's Cash Flow Per Share by ~15% in 2021E and ~50% in 2022E*

*Meaningful Immediate G&A Synergies with Further Savings Anticipated*

*Companies to Host Joint Conference Call Today at 7:30 a.m. CT / 8:30 a.m. ET*

HOUSTON and FORT WORTH, Texas, June 08, 2021 (GLOBE NEWSWIRE) -- Independence Energy, LLC ("Independence") and Contango Oil & Gas Company (NYSE American: MCF) ("Contango" or the "Company") today announced that they have entered into a definitive agreement to combine in an all-stock transaction. The combination, which was unanimously approved by both companies' Boards of Directors, will create a premier, diversified and low leverage U.S. independent oil and gas company focused on consolidation.

Independence is a diversified, well-capitalized upstream oil and gas business built and managed by KKR's Energy Real Assets team with a scaled portfolio of low-decline, producing assets with meaningful reinvestment opportunities for low-risk growth across the Eagle Ford, Rockies, Permian and Mid-Continent. Since 2011, KKR's Energy Real Assets team has been executing on a consistent cash flow and risk-based strategy, complemented by deep industry expertise, responsible investment practices and the broader capabilities of KKR's global platform. KKR is a leading global investment firm investing in a diverse range of energy sources and committed to investing in a stable energy transition, one that supports the energy needs of today in a responsible manner while also contributing to a cleaner tomorrow.

Contango is a Fort Worth, Texas based, independent oil and gas company whose business is to maximize production and cash flow from its portfolio of low-decline, producing assets primarily in the Mid-Continent, Permian, and Rockies areas. Contango has a proven track record of complementing that production and cash flow via acquisitions, having completed four significant acquisitions in the last 18 months.

Upon completion of the transaction, Independence shareholders will own approximately 76 percent and Contango shareholders will own approximately 24 percent of the combined company. Based on Contango's closing stock price of $5.62 on June 7, 2021, and pursuant to the terms of the proposed transaction, the combined company will have an initial equity market capitalization of approximately $4.8 billion and enterprise value of approximately $5.7 billion.

**Transaction Highlights**

- Positions the combined company to be a leading consolidator in the U.S. oil and gas industry through increased scale, improved access to capital, low leverage and a successful, proven management team
- The combined company is positioned to be KKR's primary platform for pursuing upstream oil and natural gas opportunities
- Projected to be highly accretive to financial metrics, including ~15% and ~50% accretive to Contango's 2021E and 2022E cash flow per share, respectively, based on current management assumptions
- Projected to provide preliminary 2022 estimated Adj. EBITDA of $750MM – $800MM and unlevered Free Cash Flow of $375MM – $400MM, with ~75% of expected 2022 cash flow attributable to PDP
- Balanced portfolio of cash flowing assets and attractive, low-risk reinvestment opportunities in key proven basins across the Lower 48
- Low leverage with pro forma Net Debt / NTM Adj. EBITDA of 1.4x
- Cash flow-oriented business model with a clear focus on superior risk adjusted returns
- Shared commitment to developing industry-leading Environmental, Social and Governance ("ESG") programs and continually improving ESG performance
- Greater than $20 million in estimated G&A synergies with further benefits of scale over time[4]
- Initiation of a go-forward dividend policy targeting approximately 10 percent of Adj. EBITDA
The combined business will be managed by KKR's Energy Real Assets team and led by David Rockecharlie, Head of KKR Energy Real Assets, who will serve as Chief Executive Officer. Contango's Chairman and largest shareholder, John Goff, will be Chairman of the Board of Directors of the combined company. Contango's senior leadership, including CEO Wilkie Colyer and President Farley Dakan, will continue managing Contango as an operating subsidiary of the combined company and focus on growth via acquisitions.

7

**Management Commentary**

"This is a very compelling merger for Contango shareholders providing substantial value accretion, significant scale and lower cost of capital. KKR's desire to position the combined company to be their long-term primary platform to focus on continued consolidation in the industry is a testament to what the team has created at Contango. As the largest shareholder of Contango and Chairman of the new combined company, I look forward to working with David Rockecharlie and the KKR team in continuing our strategy of consolidation and industry leading performance," said Mr. Goff.

"We see tremendous opportunity ahead to create long-term value in the energy sector. With today's transaction, we are continuing to execute on the strategy we have been building over the last decade and look forward to working with John, Wilkie and the entire Contango team to deliver for our shareholders," said Mr. Rockecharlie.

"When John and I joined Contango nearly three years ago, we believed an upstream acquisition platform focused on alignment of incentives, low costs and an investor's mindset could generate superior shareholder returns. While we are proud of what we have accomplished to date, the opportunities to continue to scale profitably in this industry are enormous. In David's team at KKR and Independence, we have found like-minded individuals with a scaled and complementary asset base. This partnership helps to accelerate our inorganic growth strategy with a larger balance sheet and lower cost of capital for the benefit of all stakeholders. Just as I said three years ago, I'm excited about this opportunity and ready to get to work," said Mr. Colyer.

**Transaction Details**

Under the terms of the transaction agreement, Independence will merge with an operating subsidiary ("OpCo") of a new parent company, which will become a publicly traded entity at closing, and Contango will become a wholly owned subsidiary of OpCo
The new company at closing will have an "Up-C" structure. Contango shareholders will receive Class A Common Stock representing voting and economic rights in the new parent company. Independence's owners will receive Class B Common stock representing voting rights in the new parent company and corresponding limited liability company units representing economic interests in OpCo.

**Headquarters and Governance**

The combined company will be headquartered in Houston and expects to operate under a new name and under a new ticker symbol. The combined company intends to seek to be listed on the New York Stock Exchange as part of this transaction.
The Board of Directors of the combined company will be designated by KKR as

the holder of the preferred stock discussed below. The initial board of directors at closing will consist of nine directors with two directors designated by Contango, including Mr. Goff as Chairman, and seven directors designated by KKR, including Mr. Rockecharlie.

As part of the transaction, KKR will receive a special class of non-economic preferred stock that provides KKR with the authority to appoint all members of the board of directors as well as certain consent rights over specified actions including incurrence of debt, changes in officers, mergers, acquisitions and divestitures. Upon completion of the merger, KKR's balance sheet will own approximately 17 percent of the combined company. KKR will forfeit the preferred stock if its retained common stock in the business drops below 50 percent of this initial ownership, subject to certain performance thresholds after the company's third annual shareholders meeting.

In addition, the combined company will enter into a management services agreement with a newly formed KKR subsidiary to become the manager of the combined company. The management services agreement will govern the external manager relationship between the public company and the manager as well as provide for the manager's fees and equity incentives consisting of annual grants of restricted shares that vest solely based on absolute and relative share price performance. The agreement will generally provide that upstream oil and gas opportunities sourced by KKR will be presented to the combined company, subject to certain enumerated exceptions.

## II.   The Registration Statement Omits Material Information

27.    On June 23, 2021, Defendants filed a materially incomplete and misleading Registration Statement with the SEC. The Individual Defendants had a duty to carefully review the Registration Statement before it was filed with the SEC and disseminated to Contango's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for Contango's shareholders to make an informed decision in connection with the Proposed Merger.

### A.   The Misleadingly Incomplete Financial Projections

28.    The Registration Statement omits material information regarding the financial projections for Contango and Independence and relied upon by Jefferies in its analyses. The

9

Registration Statement provides values for non-GAAP financial metrics, including EBITDAX (Unhedged and Hedged), Operating Cash Flows and Free Cash Flows, but fails to provide line items used to calculate these metrics. The Registration Statement also fails to disclose projected synergies to be realized as a result of the combined company or any costs incurred in connection with the Proposed Transaction. Registration Statement at 107.

29. The projections served as a primary reason for the Board to approve the Proposed Transaction and for Jefferies to find the Transaction Consideration "fair" to Contango shareholders. The information is plainly material and speaks squarely to the question that the Company's shareholders must answer in determining whether to vote in favor of the Proposed Transaction: Is the Transaction Consideration more or less valuable than a full stake in the standalone company? Without the material information regarding the projections, Defendants present the Company's shareholders with only a fraction of the equation, rendering them unable to answer this question and assess the fairness of the Proposed Transaction. Thus, the omitted information is plainly material to shareholders and must be disclosed.

30. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths. Accordingly, Defendants have disclosed some of the valuation information relied upon by Jefferies and the Board but have failed to disclose the material information regarding the projections. These omissions render the summary of Contango's value and financial picture in the Registration Statement misleadingly incomplete.

B. The Misleadingly Incomplete Summary of Jefferies' Valuation Analyses

31. The Registration Statement describes Jefferies' fairness opinion and the various valuation analyses performed in support of its opinion. Defendants concede the materiality of this

information by including the fairness opinions and valuation analyses among the factors considered in recommending the Proposed Transaction. Registration Statement at 103. However, the summary of Jefferies' fairness opinion and analyses provided in the Registration Statement fails to include key inputs and assumptions underlying the analyses. Without this information, as described below, Contango shareholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinions in determining whether to vote in favor of the Proposed Merger. This omitted information, if disclosed, would significantly alter the total mix of information available to Contango's shareholders.

32. In summarizing Jefferies' *Net Asset Value Analysis*, the Registration Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates utilized for Contango and Independence, (ii) net debt for both companies, and (ii) general and administrative expenses and hedge book value.

33. In summarizing the *Discounted Cash Flow Analysis – Contango*, the Registration Statement is materially misleading because it does not disclose: (i) unlevered free cash flows, (ii) the inputs and assumptions underlying the range of multiples of 5.25x to 8.0x utilized by Jefferies to calculate the terminal value of Contango, (iii) the inputs and assumptions underlying the discount rates of 10.0% to 12.0%, and (iv) net debt.

34. The summary of Jefferies' *Discounted Cash Flow Analysis – Independence* fails to disclose: (i) unlevered free cash flows, (ii) the inputs and assumptions underlying the range of multiples of 5.25x to 8.0x utilized by Jefferies to calculate the terminal value of Independence, (iii) the inputs and assumptions underlying the discount rates of 9.0% to 11.0%, and (iv) net debt.

35. The summary of Jefferies' *Comparative Public Company Analysis* is materially misleading because the Registration Statement fails to disclose: (i) the individual multiples and

metrics for the companies observed in the analysis, (ii) the "business characteristics" deemed by Jefferies to make these companies similar to Contango and Independence, respectively, and (iii) the assumptions and inputs underlying the selection of reference ranges for the benchmarks.

36. The summary of Jefferies' *Precedent Transactions Analysis* fails to disclose: (i) the closing date of the transaction, (ii) the share price on the last trading day prior to the announcement of the precedent transaction, and (iii) the total value of the precedent transactions.

37. These material omissions render the summary of Jefferies' valuation analyses included in the Registration Statement misleadingly incomplete.

38. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision regarding the Proposed Merger, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLASS ACTION ALLEGATIONS

39. Plaintiff brings this action individually and as a class action on behalf of all holders of Contango stock who are being and will be harmed by Defendants' actions described below (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

40. This action is properly maintainable as a class action and is not removable.

41. The Class is so numerous that joinder of all members is impracticable. As of August 31, 2021, there were approximately 201,180,000 shares of Contango common stock outstanding, held by hundreds if not thousands of shareholders geographically dispersed across the country.

42.     There are questions of law and fact that are common to the Class and that predominate over questions affecting any individual Class member. The common questions include, *inter alia,* the following:

    (a)     whether Defendants have misrepresented or omitted material information concerning the Merger in the Registration Statement in violation of Section 14(a) of the Exchange Act;

    (b)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

    (c)     the amount of damages Plaintiff and other members of the Class have suffered as a result of Defendants' material omissions and misstatements.

43.     Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

44.     Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

45.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the parties opposing the Class.

46.     Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

47.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

48.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(a) of the Exchange Act**

49.     Plaintiff incorporates each and every allegation set forth above as if fully set froth herein.

50.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

51.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

52.     The omission of information from a proxy will violate Section 14(a) if other SEC regulations specifically require disclosure of the omitted information.

53. Defendants have issued the Registration Statement with the intention of soliciting Contango's shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things: (i) financial projections for Contango and (ii) Jefferies' valuation analyses performed in support of its fairness opinion.

54. In so doing, Defendants made misleading statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated in or omitted from the Registration Statement, but failed to obtain and disclose such information to Contango's shareholders, though they could have done so without extraordinary effort.

55. The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. As officers or directors of the Company the Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve the Proposed Transaction and solicit shareholder consent; indeed, the Registration Statement states that Jefferies reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by Jefferies as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the financial projections and the details surrounding the process leading up to the signing of the

Transaction Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be misleadingly incomplete. Indeed, the Individual Defendants were required to review the financial analyses in connection with their receipt of the fairness opinion, question Jefferies as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

56. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in: (i) their decision to omit material information from the Registration Statement; or (ii) their failure to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as Contango's officers and directors.

57. Contango is also deemed negligent as a result of the Individual Defendants' negligence in preparing and/or reviewing the Registration Statement.

58. The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision on the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the special meeting of Contango's shareholders. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

59. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60. The Individual Defendants acted as controlling persons of Contango within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or directors of Contango, and participation in and/or awareness of Contango's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Contango, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

61. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Contango, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Board to approve the Proposed Transaction.

63. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the

Transaction Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

64. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

66. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief, in his favor and in favor of the Class, as follows:

A. Determining that this action is a proper class action and certifying Plaintiff as Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily enjoining Defendants and all persons acting in concert with them from consummating the Proposed Transaction, until Defendants disclose the material information discussed above which has been omitted from the Registration Statement;

C. Directing the Defendants to account to Plaintiff and the Class for all damages

sustained as a result of their wrongdoing;

D. Awarding Plaintiffs and the Class the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 31, 2021                               **MONTEVERDE & ASSOCIATES PC**

                                                                */s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel: (212) 971-1341
Fax: (212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*